You may proceed. Good morning, Your Honors. My name is David Chamblew. I represent Petitioner Mr. Gallardo-Torres. I reserve two minutes for rebuttal, if you will. Your Honor, I'm going to cut right to the chase. As the Court knows, with the limited time we have, there seems to be a confusion between the parties here, whether or not the petitioner's brother was really a member of a gang. What I want to say is that at least three parties involved here agreed he was completely truthful. One, the immigration judge. Two, the prosecutor in the case. How do we know that? Because when the time came for cross-examination, the prosecutor waived any cross-examination of the petitioner. What does that mean? That means all the material that the petitioner provided before the IJ, all the testimony, the asylum application, were accepted as truth. There's much made by the government about the petitioner saying, well, I don't know, possibly my brother was a member of a gang. But if you look at the transcript, in fact, he's used this I don't know several times. It's his manner of speech. He's not saying, in fact, he's being completely truthful. In his asylum application in AR-460, the Court looks at it. He clearly says my brother was involved in drug trafficking. He even talks about the motive why he thinks they shot and killed his brother in front of him and why they shot him. It's because the brother had refused to accept orders to take drugs and involve his family in the drug business. That's accepted. It's in the record. It's undisputed. So we have to accept that his brother was a member of a drug cartel, as he said so. Did the IJ accept it? He found him to be completely credible. No, but did he accept that his brother was a gang member? No, Your Honor. And that's the problem here, because if the IJ accepted everything he said are true, including his asylum application, then it was an error to find that his brother was not a former gang member. Do you think there is a distinction between being a gang member and being targeted because you won't help the gang? I think there is, because the involvement of a former gang member was certainly a lot deeper than somebody who's on the outside who's approached and said, you need to work for us. You need to or the recruitment aspect of it. Here we have a former gang member who's told to involve his family members. He refuses. He ends up being shot over 20 times. The petitioner is shot along with him, and later on his brother is shot. And as early as 2011, Your Honor, this is really telling, because there's also a lot made by the government about this internal relocation. We know as early as 2011, his best childhood friend is kidnapped. The drug cartels ask about petitioner from him. He refuses to cooperate. He's killed. His son is killed. His wife is killed and are burned. Their bodies are burned. And they make sure that this information is conveyed, and the petitioner finds out about this in 2011. It's like a chain of events. There are links, and they're all connected. So the fact that he was able to survive, not emotionally, but physically be able to live in Mexico for the amount of time that he did after these events, I think should be also coupled with the fact that he suffered PTSD. That was accepted by the court. It's never been in dispute, ever. So, yes, he physically survived, but he had fear, and he carries that fear with him. So sending him back to Mexico is sending him back to relive all those events. In addition to that... Let me just go back, because it seems your strongest argument is that the BIA made an error in predicating the gang relationship solely on that testimony of possibly. So you're saying that he said, I don't know, possibly, but that his earlier documentation actually was affirmative. Absolutely. And that possibly, again, he's an honest man. He suffers from PTSD. He's testifying. And what's telling, Your Honor, is that even the judge devotes a whole paragraph about his difficulty to recall and to testify about the murder of his brother and what happened to him. That happened when he was 17. So when we take even the judges, and he was there, he had eyeballs on him, he could hear him, his mannerism, that he had a difficult time. When you take that, the PTSD diagnosis, along with the asylum application affirmatively stating that he was a gang member, and he's saying in other parts of his testimony, I don't know, I don't know. So let me just play it out with you. So if we were to determine that, well, I think the other grounds of social groups, as you know, are not quite as strong. And so let's say we're only focusing on the drug cartel issue. And if we were to determine that substantial evidence didn't support that finding because of the other evidence you point to, then there is the alternative finding about ability to relocate. Would we need to then analyze that, or would it go back to the BIA solely based, if we were to determine that there's not substantial evidence on the drug cartel issue? I think if the court decides there was not substantial evidence to support that, we win on that argument, and then it goes back. I think we don't need to get to the internal relocation until we deal with that substantial evidence. Because you'd be looking on that on future persecution. Exactly. And the thing is, Your Honor, in 2011, there is information about what happened to his friend, and they're looking for him. We're in 2018. If we go back to the BIA, win on the lack of substantial evidence support, we go back. Once it's remanded and it goes back, both parties can talk about boots on the ground at that time. Internal relocation information, contrary reports, either by asking the BIA to take judicial notice or administrative notice, we can deal with that. So if it does come back before the court, then we have fresher evidence on the internal relocation issue. So it would make sense to remand. We win on the lack of substantial evidence support on that issue, Your Honor. Do you want to save your own question? I want to ask you one question. You made reference to the application. Yes, Your Honor. Suggesting that there was something in the application to support his testimony that his brother was a member of a gang. Was there something in the application? Yes. Affirmatively, on page AR-460. 460? 460, Your Honor. Okay. It's his asylum application. It's under oath. He signed it. It's accepted by the court. It's never been refuted by anybody. Well, he says 460 I have. It's just a member of a political, particular social group, torture convention. So in the part where it says have you, your family, your close friends or colleagues ever experienced harm. That's 461. Okay. That says my – the paragraph that says my deceased brother, Francisco Gallardo Torres, was involved with a group of criminals? Yes. He says that was involved in drug trafficking. They did not have a name then, but I think they are part of La Familia Michoacan? Correct. Now, which is a huge band of criminals in Michoacan. Yes. And then when you go back to 460, which is the substantive portion of the claim, he affirmatively again says I was shot on March 22, 1996. I was shot in Picataro, Mexico. My older brother, Francisco, was involved in drug trafficking. I was not involved in the criminal activity. I heard from a friend that my brother was in charge of taking some trucks to the border. My brother did not want to complete the task because the drug dealers had told him to involve his brothers and friends to move the trucks to the border. He refused to do the task, which made the drug dealers angry, and they pursued my brother and me and other siblings. You may want to stop. Oh, yes. Okay. And I reserve the remainder of my time. Okay. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Rebecca Nahas for the United States Attorney General. The Court should deny the petition for review because Petitioner cannot show that the harm he experienced and fears is on account of a protection. Starting with his group, immediate family members of former drug cartel members. Substantial evidence supports the agency's finding that he didn't prove he was a member of the group. To prove that he was a member of the group, he had to show that his brother was a drug cartel member. And when asked, he said, I don't know, possibly. This was his opportunity in court, represented by counsel, to tell the judge about his brother's association with the drug cartel. And all he said was, I don't know, possibly. And under the Real ID Act, which applies to this case because the asylum application was filed after 2005, credible testimony alone can be sufficient to satisfy one's burden, but only if it's persuasive and has sufficient specificity to satisfy one's burden. What about the application? Does that factor in as part of the record, correct? That is part of the record, Your Honor. And he had to agree that it was all true, right? I'm sorry, Your Honor? The Petitioner, at the beginning of the hearing, had to affirm what he testified what he put in his application. That's right, Your Honor. And the Real ID Act says that credible testimony alone is sufficient only if it's persuasive and refers to specific facts. And so while he does say in his asylum application that his brother was involved in criminal activity, he doesn't really know which group it is. He doesn't think that, in his view, he thought it was La Familia and Michoacan. Right. That's fairly specific. Right. But when provided an opportunity to testify before the immigration judge, he didn't provide any of that testimony. Well, I guess that brings us to the question of, is it part of the record that needs to be looked at, even if he didn't restate it or elaborate it? Well, Your Honor, the Petitioner did not exhaust the claim that the agency should have considered the asylum application in conjunction with his testimony. But I think that if we're going to look at the record as a whole, there's also conflicting evidence, like the psychological evaluation where his therapist said that Petitioner told her he wasn't really sure what his brother was involved with. It's at AR 160. He doesn't know the full story of what his brother was involved with, but there were men that were angry at Omar or at his brother. And 163, he has said that he feels that his brother was either involved with the wrong people or perhaps involved in illegal activity. So there's not a lot of specificity. And this is really a burden of proof issue. It's not a credibility issue, as Petitioner painted it. He was found credible, and this is a sympathetic story or experience. But in order to satisfy his burden, he must prove that he is a member of his own proposed group. But if the Court disagrees, the Court need not send this back, because there's an alternative finding with regard to this group, immediate family members of former drug cartel members. The agency also found that even if he is a member of that group, he failed to show that that was the motive for any of his past harm. So starting with the 1996 shooting, the Petitioner said all he said was, I believe it was drug cartel members who shouted my brother's name and shot him. And at the same time, he was shot. He doesn't say they shot me because of my family relationship. He doesn't say that the individuals who shot his brother even knew who he was. Instead, the ---- Let's say he was a bystander, an unfortunate bystander. But then there's the later events. You know, he's back and forth between Mexico and the U.S. and the information imparted to him about people looking for him and why he should stay away. So doesn't that ---- how does that factor in? Well, Your Honor, so turning to the threats, when asked why did these individuals threaten you, he said it's because I reported them to the police. He said I have information about them. And that was the reason he provided. He didn't say it was because I'm a family member. He didn't say it's because I'm his brother. And we really need to look at the motive of the individuals, and Petitioner's own testimony is that they wanted to silence him or punish him for speaking to the police, not because of his family membership. In fact, there's nothing in the record to show that these individuals even knew who he was, even knew that he was related to his brother. At no point were any of his other family members approached and threatened. His brother Juan was shot at at one point, but he himself acknowledged it was a case of mistaken identity. They were really going after him, Petitioner, not his brother. Right? So we don't have any other family members being threatened. We have this case of mistaken identity and just nothing in the record to show that the family membership was a motive. Now, the BIA found that he could relocate within Mexico, right? And doesn't the Petitioner challenge that finding? Yes, Your Honor. And I filed a 28-J yesterday or the day before. I'm sorry that it's late. But we've reconsidered our position, and we don't believe that the court should reach the humanitarian asylum issue in the first instance. And because of that, the internal relocation finding does sort of collapse. The court doesn't need to reach it because it's no longer independently dispositive. It's only independently dispositive with the humanitarian asylum finding because a person who is able to show past persecution on account of a protected ground is entitled to a presumption that even if the government rebuts that presumption with evidence of internal relocation, they'd still be eligible for humanitarian asylum if they meet this high burden. I haven't seen that 28-J letter, but what's the reason you say we don't have to reach that issue anymore, humanitarian asylum? Well, Your Honor, Petitioner did raise the issue before the agency, and the agency failed to consider it. And so originally our position was that perhaps the court could reach it in a harmless error, but I really think that this is a discretionary determination that the agency must consider in the first instance. So do we have to send it back no matter what? No, Your Honor, because Nexus is independently dispositive of both his asylum and withholding claims. So we don't need the internal relocation finding. We don't need the humanitarian. In order to be eligible for humanitarian asylum, you must show past persecution on account of a protected ground. But if we disagree with the government on that, you say we would have to send it back then? On Nexus? Yes. Yes, Your Honor. Okay. Did you say the Nexus applies also to humanitarian asylum? Yes, Your Honor. In order to be eligible for humanitarian asylum, you must first prove past persecution on account of a protected ground. And our position is that Petitioner hasn't shown that. And would Your Honors like me to address any of the other groups? Well, there was — well, why don't you address Catt for a moment? Sure. Your Honor, I think that the Catt claim Petitioner failed. Substantial evidence supports the agency's finding that Petitioner failed to show that there's a clear probability of future torture. And the reason is he moved to Mexico City and Baja California for a total of eight years. And his own testimony is that in those eight years, he didn't experience any harm. He wasn't approached. He wasn't threatened. The only time that he was threatened during that time period is when he went to his hometown in Michoacan. And there — so if he just doesn't go to Michoacan and internally relocates like he did for eight years, he will not — there's no evidence that he'll — Is — there are other factors, though, that the BIA is supposed to consider besides internal relocation, correct? That's correct, Your Honor. And did they do that here? Your Honor, the agency did not discuss each factor in — in — you know, they didn't discuss each of the factors. However, the I.J. did cite the regulation and the I.J. in his decision laid out the four factors. And in his decision as well, the I.J. said that he considered all the evidence in the record, even if it wasn't expressly stated in his decision. And this Court in Colvi-Holder said that we presume that the agency considered the evidence before it unless they fail to mention evidence that's potentially dispositive. And Petitioner hasn't pointed to any potentially dispositive evidence that the agency overlooked in its CAT analysis, where he was able to remain in Mexico City and Baja California for eight years without harm. Okay. Thank you. Your Honors. You have a minute for rebuttal. Well, I'm over, so I just have a few minutes. You have, but I'll give you a minute for rebuttal. Okay. Thank you. The government issued — raised this issue of exhaustion. We didn't have to exhaust what's already in the record. We've always claimed that his brother was a member of a drug cartel, former member, and he was a family member. And the BIA just failed to consider that. I mean, they said that the possibly was the hook that they hung their coat on, and they decided that possibly was not enough. But there's far more in this record, including the asylum application, that talks about clearly that the brother was a member of the la familia Metro-Con. He even states in his asylum application that at the time, back in 96, they didn't even have a name at the time. But later on, they were known as la familia Metro-Con. So he's raised that. Both the IJ and the BIA gave no regard to that. And it is part of the record. It is statements made under oath, signed before the judge, before it's even accepted. Those procedures were all followed. They gave no regard. And substantial evidence does not support neither the IJ's finding nor the BIA finding. And this Court should grant the petition reverse on those grants. Thank you. Thank you. Thank both of you for your arguments this morning. The case of Gallardo-Torres v. Sessions is submitted. We'll now hear Guadalupe Gonzalez v. Knuth.
judges: Tashima, McKeown, Paez